# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JARELL BROWN and RICARDO BURTON, *individually and on behalf of all others similarly situated*, | Case No. _____ |
| *Plaintiffs*, | |
| v. | (JURY TRIAL DEMANDED) |
| WHALECO INC. d/b/a TEMU, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

Plaintiff Jarell Brown ("Plaintiff Brown") and Plaintiff Ricardo Burton ("Plaintiff Burton"), individually, and on behalf of all others similarly situated (collectively, "Plaintiffs"), make the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to allegations pertaining specifically to themselves or their counsel, which are based on personal knowledge.

## NATURE OF ACTION

1.       Plaintiffs bring this Class Action Complaint for legal and equitable remedies resulting from the illegal actions of Whaleco Inc. d/b/a Temu ("Defendant" or "Temu") in transmitting unsolicited SMS text message advertisements to their cellular telephones and the cellular telephones of numerous other consumers across the country whose numbers appear on the National Do Not Call Registry ("DNC List" or "Do Not Call List"), in violation of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## PARTIES

### I.    Plaintiff Brown

2.      Plaintiff Brown is, and at all times relevant hereto was, a citizen and resident of Essex County, New Jersey. Plaintiff Brown is an individual and a "person" as defined by 47 U.S.C. § 153(39).

3.      Plaintiff Brown is, and at all times mentioned herein was, the subscriber of the cellular telephone number (973) ***-9534 (the "9534 Number"). The 9534 Number is, and at all times mentioned herein was, assigned to cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff Brown's 9534 Number has been listed on the national DNC List since August 26, 2010.

4.      During the statutory period, and at all hours of the day, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, numerous SMS and/or MMS text message advertisements to the 9534 Number without Plaintiff Brown's "prior express written consent."

5.      The SMS text message advertisements sent by Defendant to the 9534 Number and to the telephone numbers of the members of the proposed Classes defined below originated from the telephone numbers (321)-442-2128, (448)-228-7333, and (702)-592-7677 which are numbers that were leased by Defendant or Defendant's agent(s) or affiliate(s) and used for operating Defendant's text message marketing program.

6.      Recent examples of the messages Plaintiff Brown received from Defendant are depicted in the screenshots below, which were extracted from Plaintiff Brown's cellular device:



7.     All of the complained of text messages sent by Defendant to the 9534 Number and to the numbers assigned to putative Class members constituted telephone solicitations as defined by 47 U.S.C. § 227(a)(4), "telemarketing" as defined by 47 C.F.R. § 64.1200(f)(12) & *id.* § 64.1200(a)(2), and "advertisements" as defined by 47 C.F.R. § 64.1200(f)(1), & *id.* § 64.1200(a)(2). This is because Defendant sent the text messages to market and advertise the commercial availability of its services and goods, for the purpose of selling such goods to Plaintiff Brown and the other putative Class members for profit.

8.      All the complained of text messages sent by Defendant to the 9534 Number and to the numbers assigned to putative Class members were calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i) and 47 C.F.R. § 64.1200.

9.      All telephone contact by Defendant or affiliates, subsidiaries, or agents of Defendant to the 9534 Number and to the numbers assigned to putative Class members occurred via an "automated telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).

10.      Neither Plaintiff Brown nor the other putative Class members provided their "prior express written consent" to allow Defendant or any affiliate, subsidiary, or agent of Defendant to transmit text message advertisements to the 9534 Number or to any of the other Class members' mobile telephone numbers.

11.      Whether or not Defendant's text messages to Plaintiff Brown and others similarly situated were sent pursuant to a common telemarketing scheme for which Defendant, or any agent or intermediary acting on its behalf, Defendant did not comply with, and thus violated, the telemarketing and DNC List restrictions of the TCPA and the telephone solicitation restrictions in 47 C.F.R. § 64.1200(c)-(e).

12.      Defendant transmitted more than one text message advertisement over a 12-month period to Plaintiff Brown's 9534 Number and to the cellular telephone numbers of the other putative Class members despite the fact that such numbers had been registered on the DNC List for greater than 30 days, in violation of the TCPA and the regulations set forth in 47 C.F.R. § 64.1200(c)(2).

II.     **Plaintiff Burton**

13.     Plaintiff Burton is, and at all times relevant hereto was, a citizen and resident of Wayne County, Michigan. Plaintiff Burton is an individual and a "person" as defined by 47 U.S.C. § 153(39).

14.     Plaintiff Burton is, and at all times mentioned herein was, the subscriber of the cellular telephone number (313) ***-7910 (the "7910 Number"). The 7910 Number is, and at all times mentioned herein was, assigned to cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff Burton's 7910 Number has been listed on the national DNC List since August 26, 2010.

15.     During the statutory period, and at all hours of the day, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, numerous SMS and/or MMS text message advertisements to the 7910 Number without Plaintiff Burton's "prior express written consent."

16.     The SMS text message advertisements sent by Defendant to the 7910 Number and to the telephone numbers of the members of the proposed Classes defined below originated from the telephone numbers (321)-442-2128, (448)-228-7333, and (702)-592-7677 which are numbers that were leased by Defendant or Defendant's agent(s) or affiliate(s) and used for operating Defendant's text message marketing program.

17.     Recent examples of the messages Plaintiff Burton received from Defendant are depicted in the screenshots below, which were extracted from Plaintiff Burton's cellular device:



18.     All of the complained of text messages sent by Defendant to the 7910 Number and to the numbers assigned to putative Class members constituted telephone solicitations as defined by 47 U.S.C. § 227(a)(4), "telemarketing" as defined by 47 C.F.R. § 64.1200(f)(12) & *id.* § 64.1200(a)(2), and "advertisements" as defined by 47 C.F.R. § 64.1200(f)(1), & *id.* § 64.1200(a)(2). This is because Defendant sent the text messages to market and advertise the commercial availability of its services and goods, for the purpose of selling such goods to Plaintiff Burton and the other putative Class members for profit.

19.     All of the complained of text messages sent by Defendant to the 7910 Number and to the numbers assigned to putative Class members were calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i) and 47 C.F.R. § 64.1200.

20.     All telephone contact by Defendant or affiliates, subsidiaries, or agents of Defendant to the 7910 Number and to the numbers assigned to putative Class members occurred via an "automated telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).

21.     Neither Plaintiff Burton nor the other putative Class members provided their "prior express written consent" to allow Defendant or any affiliate, subsidiary, or agent of Defendant to

transmit text message advertisements to the 7910 Number or to any of the other Class members' mobile telephone numbers.

22.     Whether or not Defendant's text messages to Plaintiff Burton and others similarly situated were sent pursuant to a common telemarketing scheme for which Defendant, or any agent or intermediary acting on its behalf, Defendant did not comply with, and thus violated, the telemarketing and DNC List restrictions of the TCPA and the telephone solicitation restrictions in 47 C.F.R. § 64.1200(c)-(e).

23.     Defendant transmitted more than one text message advertisement over a 12-month period to Plaintiff Burton's 7910 Number and to the cellular telephone numbers of the other putative Class members despite the fact that such numbers had been registered on the DNC List for greater than 30 days, in violation of the TCPA and the regulations set forth in 47 C.F.R. § 64.1200(c)(2).

### III.     Defendant Whaleco Inc. dba Temu

24.     Defendant Whaleco Inc. dba Temu is an online marketplace that connects consumers with sellers, manufacturers, and brands globally.  Defendant is a Delaware corporation that maintains its corporate headquarters and principal place of business at 31 St. James Avenue, Suite 355, Boston, Massachusetts 02116.  Defendant is a "person" as defined by 47 U.S.C. § 153(39).

### JURISDICTION AND VENUE

25.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

26.    Personal jurisdiction and venue are proper in this district because Defendant maintains its headquarters and principal place of business in Boston, Massachusetts, within this judicial District.

## TELEPHONE CONSUMER PROTECTION ACT OF 1991

27.    In 1991, Congress enacted the TCPA to address consumer complaints regarding certain abusive telemarketing practices. The TCPA prohibits, inter alia, the use of automated telephone equipment, or "autodialers," to make any call, including sending a text message, to a wireless number absent an emergency or the "prior express consent" of the party called. And in the case of "advertisements" or "telemarketing" calls or texts, as defined by applicable regulations, the TCPA requires the "prior express <u>written</u> consent" of the called party to initiate such a call or text.

28.    Even in the face of the TCPA, automated and telemarketing calls thrived, prompting the U.S. Federal Trade Commission to enact the DNC List pursuant to the Do-Not-Call Implementation Act of 2003, 15 U.S.C. § 6101 et. seq. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 29 Comm. Reg. (P & F) 830 (F.C.C. June 26, 2003). Registration for the DNC List began on June 27, 2003 and enforcement started on October 1, 2003.

29.    The TCPA prohibits companies from initiating telephone solicitations, via phone call or text message, to any number registered on the DNC List. *See* 47 C.F.R. § 64.1200(c)(2).

30.    Even after implementation of the DNC List, automated telemarketing continues to plague American cellular phone subscribers. "Since 2009, the FTC has seen a significant increase in the number of illegal sales calls . . . . Internet powered phone systems make it cheap and easy

for scammers to make illegal calls from anywhere in the world, and to display fake caller ID information, which helps them hide from law enforcement."[1]

31.     Additionally, the TCPA prohibits companies from making calls or sending texts to non-business phone numbers before 8 a.m. and after 9 p.m. *See* 47 C.F.R. § 64.1200(c)(1).

32.     According to findings by the Federal Communication Commission ("FCC"), which is vested with the authority to issue regulations implementing the TCPA, wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes or texts are used.

33.     One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones. According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds — from coupons to phishing schemes — sent directly to user's cell phones."[2]

34.     SMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS text message is transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because wireless telephones are carried on their owner's person, SMS text messages are received virtually anywhere in the world.

35.     Unlike conventional advertisements, SMS message advertisements can actually cost recipients money because wireless phone users must pay their wireless providers either for

---

[1]     National Do Not Call Registry, Federal Trade Commission, *available at* https://www.consumer.ftc.gov/articles/0108-national-do-not-call-registry (last accessed December 9, 2018).
[2]     Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited April 6, 2018).

each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

36.     Moreover, the transmission of an SMS text message to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

## CLASS ALLEGATIONS

37.     Plaintiffs bring this civil class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves individually and as representatives of the following class of persons entitled to statutory damages under the federal TCPA:

> All persons in the United States who, within any 12-month period during the four (4) years preceding the filing of this Class Action Complaint through the date on which class certification is granted, received more than one text message promoting the sale of Defendant's goods or services sent by Defendant or an affiliate, subsidiary, or agent of Defendant more than 30 days after registering their telephone number on the National Do-Not-Call Registry.[3]

38.     Defendant, its employees, and agents are excluded from the Class.

39.     Plaintiffs and all putative Class members have been impacted and harmed by the acts of Defendant or its affiliates or subsidiaries.

40.     This Class Action Complaint seeks injunctive relief and monetary damages on behalf of Plaintiffs and the putative Class members.

41.     This action may properly be brought and maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and (b). The Class satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

---

[3] Plaintiffs reserve the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

42.     Upon application by Plaintiffs' counsel for certification of the Class, the Court may also be requested to utilize and certify one or more additional subclass(es) in the interests of manageability, justice, or judicial economy.

43.     **Numerosity**. A substantial number of persons comprise each of the Classes, which are each believed to consist of thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

44.     **Typicality**. While residing in the United States, Plaintiffs received at least one text message from Defendant, without having provided their prior express written consent to Defendant. Consequently, the Plaintiffs' claims are typical of the claims of the members of the putative Class, and Plaintiffs' interest are consistent with and not antagonistic to those of the other members of the Class they seek to represent. Plaintiffs and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's transmission of text messages to telephone numbers registered on the national DNC List.

45.     **Adequacy**. Plaintiffs have no interests adverse to, or which conflict with, the interests of the absent members of the Class and are able to fairly and adequately represent and protect the interests of the Class. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave to amend this Class Action Complaint to add additional representatives or assert additional claims on behalf of the Class, as well as to add one or more class(es) or sub-class(es).

46.    **Competency of Class Counsel**. Plaintiffs have retained and are represented by experienced, qualified, and competent counsel committed to prosecuting this action.  Counsel are experienced in handling complex class action claims, in particular claims under the TCPA and other state and federal data privacy and consumer protection statutes.

47.    **Commonality and Predominance**. There are well-defined common questions of fact and law that exist as to all members of the Class which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from class member to class member and may be determined without reference to the individual circumstances of any class member, include (but are not limited to) the following: whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted, within a 12-month period, more than one text message to the cellular telephones of Plaintiffs and Class members despite such numbers having been registered for more than 30 days on the DNC List and whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

48.    **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the

parties and of the court system and protects the rights of each member of the Class. Plaintiffs anticipate no difficulty in the management of this action as a class action. Class-wide relief is essential to compel compliance with the TCPA. The interest of the Class members in individually controlling the prosecution of separate claims is small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the text messages at issue are all automated and Class members can be readily located and notified of this class action through Defendant's text message transmission records and, if necessary, the records of cellular telephone providers.

49.     Additionally, the prosecution of separate actions by individual members of the Class may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty members of the Class to protect their interests. The prosecution of individual actions by members of the Class could further establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

50.     Defendant or any affiliates, subsidiaries, or agents of Defendant have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate. Moreover, on information and belief, Plaintiffs allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**CLAIM FOR RELIEF**
**VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)(2))**

51.     Plaintiffs incorporate by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

52.     Plaintiffs and each member of the Class received, within any 12-month period, more than one text message that promoted the sale of Defendant's goods or services at a time more than 30 days after Plaintiffs' and each Class member had registered their respective phone numbers with the national Do-Not-Call Registry. Each such text message constituted a telephone solicitation call within the meaning of the TCPA and its implementing regulations. Neither Plaintiffs nor any other Class member provided Defendant prior express written consent to receive such text messages.

53.     Defendant's transmission of more than one text message solicitation within any 12-month period to Plaintiff Brown's 9534 Number and Plaintiff Burton's 7910 Number (collectively, "Plaintiffs' Numbers") and to each Class member's cellular telephone number, as set forth above, constituted violations of the TCPA by Defendant, including but not limited to violations of 47 U.S.C. § 227(c)(5) and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(2) and 47 C.F.R. § 64.1200(e).

54.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(2) and 47 C.F.R. § 64.1200(e), Plaintiffs and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future pursuant to 47 U.S.C. § 227(c)(5)(A).

55.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(2) and 47 C.F.R. § 64.1200(e), Plaintiffs and all Class members are also entitled to, and do seek, an award of statutory damages of up to $500.00 (or up to $1,500.00 for any willful or knowing violations) for each such violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(B).

## PRAYER FOR RELIEF

56.     WHEREFORE, Plaintiffs pray for relief and judgment in favor of themselves and the members of the proposed Class, as follows:

A.  Statutory damages of $500.00 (or up to $1,500.00 for any willful or knowing violations) for Plaintiffs and each member of the Class for each of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(2) and 47 C.F.R. § 64.1200(e), pursuant to 47 U.S.C. § 227(c)(5)(B);

B.  Injunctive relief prohibiting such violations of the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3)(A) and 47 U.S.C. § 227(c)(5)(A);

C.  An award of attorneys' fees and costs to counsel for Plaintiffs and the Class; and

D.  An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the Class proposed herein and any Subclasses the Court deems appropriate, finding that Plaintiffs are adequate representatives of the Class, and appointing the law firms representing Plaintiffs as counsel for the Class.

## DEMAND FOR JURY TRIAL

On behalf of themselves and all others similarly situated, Plaintiffs demand a trial by jury on all claims and issues so triable.

Dated:  October 3, 2024

By:  /s/ *William F. Sinnott*
William F. Sinnott, BBO #547423
HINCKLEY, ALLEN & SNYDER LLP
28 State Street
Boston, MA 02109
wsinnott@hinckleyallen.com
Tel:  (617) 345-9000
Fax: (617) 345-9020


Arun G. Ravindran*
aravindran@hedinllp.com
Elliot O. Jackson*
ejackson@hedinllp.com
HEDIN LLP
1395 Brickell Avenue, Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801

E. POWELL MILLER*
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200
epm@millerlawpc.com

* Pro Hac Vice App. Forthcoming


*Counsel for Plaintiffs and the Putative Class*